Gerard W. White
Brian P. R. Eisenhower
HILL RIVKINS LLP
45 Broadway, Suite 1500
New York, New York 10006
*Attorneys for Respondents*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

GALILEA, LLC and CHRISTOPHER L.
KITTLER,

                                                          1:19-cv-05768-VEC

                    Petitioners,

      v.

AGCS MARINE INSURANCE
COMPANY, LIBERTY MUTUAL
INSURANCE COMPANY, and STARSTONE
NATIONAL INSURANCE COMPANY,

                    Respondents.

-------------------------------------------------------------

**RESPONSE TO AMENDED PETITION TO**

**VACATE ARBITRATION AWARD**

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................... 1

I.    BACKGROUND ....................................................................................................... 1

    a.    The Parties and Jurisdiction ....................................................................... 1

    b.    Insuring the GALILEA ............................................................................... 3

    c.    GALILEA's Grounding and the Underwriters' Reservation of Rights ................. 3

    d.    Procedural History ...................................................................................... 4

II.    LAW AND ARGUMENT ........................................................................................ 6

    a.    The Arbitrators Did Not Exceed Their Powers ........................................... 6

        i.    Proper Location of Arbitration ......................................................... 6

        ii.    No Issue Regarding Arbitration Rules .................................... 10

        iii.    The Issue of Arbitrability was Delegated to the Arbitrators ................... 12

    b.    Petitioners Fail to Establish Manifest Disregard of the Law ............................... 18

    c.    Evident Partiality or Corruption are Not Supportable Grounds to Vacate the Award on this Record and New York Law Clearly Requires Misconduct by the Arbitrator, not Unproven or Disputed Assertions. ............................... 20

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,
  307 F.3d 24 (2d Cir. 2002) ......................................................................... 17

Aerojet–General Corp. v. American Arbitration Ass'n,
  478 F.2d 248 (9th Cir.1973) ........................................................................ 9

AGCS Marine Ins. Co. et al. v. Galilea, LLC, 1:15-cv-09168-AT (S.D.N.Y.) ............................. 8

Batas v. Prudential Ins. Co. of Am.,
  281 A.D.2d 260 (1st Dep't 2001) ................................................................. 14

Celle v. Barclays Bank P.L.C.,
  48 A.D.3d 301 (1st Dep't 2008) ................................................................... 13

City of New York v. 611 W. 152nd St., Inc.,
  273 A.D.2d 125 (1st Dep't 2000) ................................................................. 13

Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.,
  70 N.Y.2d 382 (1987) ............................................................................. 14

D.H. Blair & Co. v. Gottdiener,
  462 F.3d 95 (2d Cir. 2006) ......................................................................... 6

Doscher v. Sea Port Grp. Sec., LLC,
  832 F.3d 372 (2d Cir. 2016) ........................................................................ 2

Ellison Framing, Inc. v. Zurich Am. Ins. Co.,
  805 F. Supp. 2d 1006 (E.D. Cal. 2011) .......................................................... 9

Folkways Music Publishers v. Weiss,
  989 F.2d 108 (2d Cir. 1993) ........................................................................ 6

Galilea, LLC v. AGCS Marine Ins. Co.,
  879 F.3d 1052 (9th Cir. 2018) ............................................................... passim

Galilea, LLC v. AGCS Marine Ins. Co.,
  No. CV 15-84-BLG-SPW, 2016 WL 754221 (D. Mont. Feb. 24, 2016) ....................... 8

Galilea, LLC v. AGCS Marine Ins. Co.,
  No. CV 15-84-BLG-SPW, 2016 WL 1328920 (D. Mont. Apr. 5, 2016) ....................... 8

ii

George Backer Mgmt. Corp. v. Acme Quilting Co.,
   46 N.Y.2d 211 (1978) ................................................................................ 15

In re Kinoshita & Co.,
   287 F.2d 951 (2d Cir. 1961) ..................................................................... 16

Migliore v. Manzo,
   28 A.D.3d 620, 813 N.Y.S.2d 762 [2006] .............................................. 15

Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.,
   51 F. Supp. 3d 379 (S.D.N.Y. 2014) ....................................................... 14

Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy,
   449 F. App'x 57 (2d Cir. 2011) ................................................................ 15

Schneider v. Kingdom of Thailand,
   688 F.3d 68 (2d Cir. 2012) ....................................................................... 18

Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.,
   No. 11-CV-4743 ADS ETB, 2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012) ........................... 14

Stemcor USA, Inc. v. Miracero, S.A. de C.V.,
   66 F. Supp. 3d 394 (S.D.N.Y. 2014) ....................................................... 18

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,
   559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ....................... 20

T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.,
   592 F.3d 329 (2d Cir. 2010) ..................................................................... 17

Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas,
   509 F. App'x 54 (2d Cir. 2013) ................................................................ 14

US Bank Nat. Ass'n v. Lieberman,
   98 A.D.3d 422, 950 N.Y.S.2d 127 (2012) ............................................... 15

Vaden v. Discover Bank,
   556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) ............................... 2

**Statutes**

9 U.S.C. § 2 ...................................................................................................... 3

9 U.S.C. § 4 ...................................................................................................... 4

9 U.S.C. § 10 ................................................................................................. 1, 2

28 U.S.C. § 1333..................................................................................................... 2

New York Insurance Law § 3204(a)................................................................ 19, 20

Respondents, AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and StarStone National Insurance Company (formerly known as Torus National Insurance Company) (hereinafter, collectively referred to as "Respondents" or "Underwriters"), respond to the Amended Petition to Vacate Arbitration Award (hereinafter "Amended Petition") as follows:

## PRELIMINARY STATEMENT

Petitioners, Galilea, LLC and Christopher L. Kittler, argue under 9 U.S.C. § 10 for vacatur of the Final Award dated March 20, 2019, rendered by a three-member arbitral tribunal under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Petitioners allege that the arbitrators exceeded their authority, manifestly disregarded the law, and were evidently partial or corrupt.  Respondents disagree and address Petitioners' arguments below.  Respondents do not agree with all of Petitioners' factual allegations and characterizations, and refer the Court to the Final Award for factual findings that have already been made.  However, as Petitioners' "Amended Petition" is really a memorandum of law rather than a pleading, Respondents respond to it as they would to any other memorandum of law, constrained by the Court's word limits.  Unless specifically admitted, Respondents expressly do not admit any of the factual allegations or characterizations contained in the Amended Petition.

## I.   BACKGROUND

### a.   The Parties and Jurisdiction

In arguing that the Court has diversity jurisdiction over this matter, the Amended Petition inaccurately states, at pages 3-4, that, "[t]he Award itself awards nearly $130,000 in arbitration costs and fees."  Similarly, at page 8, the Amended Petition inaccurately states that, "[t]he Award found in favor of the Insurers and awarded them 'the administrative fees and expenses of the ICDR totalling [sic] $26,450.00' and the arbitrators' fees 'totalling [sic] $97,430.00.'"  However, what the Award actually states is that the administrative fees and expenses, totaling $26,450.00,

1

and the fees of the arbitrators, totaling $97,430.00, shall be borne solely by Galilea, LLC and Mr. Kittler (a total of $123,880). (Final Award at 36, Eisenhower Aff. Ex. A.) In order to achieve that allocation, the Final Award requires Galilea, LLC and Mr. Kittler to reimburse Underwriters the sum of $59,340.00, representing the amount Underwriters had previously paid to the AAA. (Prior to the Final Award, the parties had been required by the AAA to pay their respective shares of the fees and costs, as they would have been obligated to do in the absence of an award re-allocating them.) Accordingly, the monetary award in favor of the Underwriters is less than $75,000.

In any event, this case is within the Court's admiralty jurisdiction under 28 U.S.C. § 1333 as the underlying controversy between the parties concerns the grounding of a yacht while it was being navigated near Colon, Panama, and the declination of coverage under a policy of marine insurance. "[A] federal district court faced with a [9 U.S.C.] § 10 petition may 'look through' the petition to the underlying dispute, applying to it the ordinary rules of federal-question jurisdiction and the principles laid out by the majority in *Vaden*." Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 388 (2d Cir. 2016) (citing Vaden v. Discover Bank, 556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009)). Here, the Court of Appeals for the Ninth Circuit has previously determined that the parties' dispute falls within federal admiralty jurisdiction:

> Policies that insure maritime interests against maritime risks are contracts subject to admiralty jurisdiction and to federal maritime law. *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1025 (9th Cir. 2001). The insurance policy here is a maritime insurance contract and so would seem to be subject to federal maritime law.
> . . .
> The Supreme Court long ago established that where an "insurance policy ... is a maritime contract the Admiralty Clause of the Constitution brings it within federal jurisdiction." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

Galilea, LLC v. AGCS Marine Ins. Co., 879 F.3d 1052, 1057 (9th Cir. 2018).  The Ninth Circuit

further stated:

> The FAA specifically applies to "maritime transaction[s]." 9 U.S.C. § 2. "Maritime
> transactions" include, among other types of agreements, "agreements relating to ...
> repairs to vessels, collisions, or any other matters in foreign commerce which, if
> the subject of controversy, would be embraced within admiralty jurisdiction." Id. §
> 1.[4] The parties' insurance policy relates both to collisions and to repairs to the
> Yacht, and, as Wilburn Boat holds, 348 U.S. at 313, 75 S.Ct. 368, a dispute
> concerning a maritime insurance policy comes within federal admiralty
> jurisdiction.

Galilea, LLC v. AGCS Marine Ins. Co., 879 F.3d 1052, 1058 (9th Cir. 2018) (footnote regarding

contracts of employment of seamen is not relevant here and is omitted).

**b.      Insuring the GALILEA**

To be clear, worldwide navigation limits were available but were not requested or

otherwise included in the policy issued to Galilea, LLC, which had a limited Cruising Area based

on the quote request and the application submitted by Petitioners.  "On the basis of the evidence

produced at the hearing," the arbitral tribunal concluded that no specific request was made by the

Kittlers for "insurance coverage for the Galilea to leave its berth in Florida, transit the Caribbean,

cross the Panama Canal and travel up the west coast of Central America and Mexico to

California."  (Final Award at 23-24, Eisenhower Aff. Ex. A.)

**c.      GALILEA's Grounding and the Underwriters' Reservation of Rights**

Purportedly summarizing the Final Award, the Amended Petition misleadingly cites page

17 and states, "But within hours, and without any apparent investigation, the Insurers denied

coverage."  Respondents specifically deny this characterization, as the Final Award did not

conclude that coverage was denied on June 24, 2015, the day that Petitioner Chris Kittler notified

Pantaenius of the claim, or that such a denial was made "without any apparent investigation."

Instead, at pages 17-18 of the Final Award, the arbitral tribunal found that, "Pantaenius further

advised the Kittlers that they were continuing to investigate the accident but that they were reserving all rights under the policy." (Eisenhower Aff. Ex. A.) Also, page 18 of the Final Award states, "Pantaenius issued a declination of coverage letter on July 9, 2015 …" (Id.)

### d.    Procedural History

The Amended Petition notes that Respondents filed an action in the Southern District of New York in 2015 seeking to compel arbitration. AGCS Marine Ins. Co. et al. v. Galilea, LLC, No. 1:15-cv-09168. The action was filed in an abundance of caution in case the District of Montana found that it lacked the power to compel arbitration in New York; in this connection, the Memorandum of Law in Support of the Petition to Compel Arbitration explained:

> It is noted that Petitioners previously filed a motion in the District of Montana seeking to compel arbitration pursuant to the FAA, which motion is still pending, but now file the present Petition in the Southern District of New York as it appears that 9 U.S.C. § 4 has been interpreted by some courts to require that an application seeking to compel arbitration must be decided by the district court for the district in which the arbitration is to proceed. Petitioners are suggesting to the District of Montana that it may transfer the motion to compel arbitration pending there to this Court on the basis of 28 U.S.C. § 1404 and the doctrine of *forum non conveniens* in view of the PAYP's forum selection clause calling for resolution of any and all disputes before the AAA in New York. It is further noted that on September 29, 2015, and without allowing Petitioners the opportunity to respond to Respondent's application for a temporary stay of the New York arbitration, the District of Montana issued an order staying the arbitration proceedings pending that court's decision on Respondent's Motion to Stay Arbitration Proceedings. Respondent's motion is still pending.

Id., No. 1:15-cv-09168, ECF No. 5 at 2-3 (Nov. 20, 2015).

The Amended Petition inaccurately states that the petition in this prior action in the Southern District of New York was not served until February 5, 2016, whereas the docket entry it cites reflects service on January 29, 2016. (Eisenhower Aff. Ex. B, ECF No. 12.) The reason for the delay in service is evidence by a Proof of Service stating, "Service was completed on the 8TH attempt to serve Chris Kittler. Chris Kittler was avoiding service of the documents." (Id.,

ECF No. 12-2 at 1.)  In fact, as reflected in an "Affidavit of Attempted Service re: Galilea,

LLC," extensive efforts were made to effect service on Galilea, LLC and one of its members,

Christopher Kittler, beginning on December 15, 2015, when it was discovered that the office of

Galilea, LLC's registered agent in Nevada was vacant.  (Id., ECF No. 12-1 at ¶¶ 3-4.)

While the Amended Petition states the Ninth Circuit ruled that, "based on New York law

stating that insurance applications are not admissible for any reason, the insurance application is

not a contract," the Ninth Circuit made no mention of admissibility, instead reasoning that the

application was not part of the insurance policy because it was not attached to the policy when it

was issued.  Galilea, LLC v. AGCS Marine Ins. Co., 879 F.3d 1052, 1056–57 (9th Cir. 2018).

The Ninth Circuit expressly stated that it was not considering "the extent to which other

representations made in the application are incorporated into the policy or may otherwise be

considered when interpreting or enforcing the policy." Id. at 1057, n. 3.  The Amended Petition

goes on to complain that on the first day of the hearing (December 12, 2018), "the arbitrators

allowed Insurers to introduce and rely upon the insurance application in violation of New York

law, which they clearly knew from the Ninth Circuit decision."  However, during the arbitration

hearings, Galilea, LLC and Mr. Kittler never once objected to the admission of the application as

an exhibit.  The only exhibit to which they objected, after the parties conferred in an effort to

resolve objections, was Claimants' Exhibit 11, relating to telephone records.[1]  (Eisenhower Aff.

Ex. C, transcript of Arbitration Hearings at 33:18-25.)  In fact, Mr. Gleason himself, as counsel

for Galilea, LLC and Mr. Kittler, asked Andrea Giacomazza of Pantaenius questions regarding

the application on the first day of the hearing.  (Id., Tr. 237:21-25, 258:1-21, 286:1-17.)  Mr.

Gleason went on to question Mr. Christopher Kittler at length about the application, including

---

[1] Resolved by offering the live testimony of Rob Blumer of Clear Choice Communications.

the substance of his responses to questions contained in it, (Id., Tr. 347:3-23, 400:19-402:12, 404:19-407:12, 408:13-17, 412:5-14), and also asked Mrs. Taunia Kittler questions relating to the submission of the application, (see, e.g., id., Tr. 517:8-24).  Accordingly, by failing to raise an objection to the use of the insurance application as an exhibit during the hearings – and actually relying upon the application as evidence in questioning witnesses – Galilea, LLC and Mr. Kittler clearly waived any objection to the arbitral tribunal's consideration of it.

For the sake of brevity and avoiding repetition, Petitioners' mischaracterizations and omissions concerning the process for appointment of the arbitrators and Petitioners' repeated acceptance of the arbitral tribunal at various stages of the proceeding are addressed below in the response to Petitioners' argument that there was evident partiality or corruption.

## II.      LAW AND ARGUMENT

The Amended Petition cites Second Circuit case law to the effect that "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation," and that "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."  (Am. Pet. at 8-9, citing Folkways Music Publishers v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993); D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).)  Petitioners allege multiple bases for vacatur, which we address in turn.

### a.      The Arbitrators Did Not Exceed Their Powers

#### i.   Proper Location of Arbitration

Galilea, LLC and Mr. Kittler claim that the location of the arbitration in New York was improper.  However, as the parties' agreement calls for arbitration in New York County, the AAA and the arbitral tribunal complied with Rule R-11 of the Commercial Arbitration Rules, (contained in Eisenhower Aff. Ex. A), which states in relevant part that:

6

(b) When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator upon appointment that applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

In essence, Petitioners argue that the District of Montana lacked the power to compel arbitration in New York.  However, they did not raise this issue in the Ninth Circuit, and on remand the District of Montana issued an order granting the Underwriters' motion to compel arbitration in its entirety.  Galilea, LLC v. AGCS Marine Ins. Co. et al., 1:15-cv-00084-SPW, ECF Doc. No. 59 (D. Mont. Feb. 9, 2018).  Underwriters' Motion to Dismiss and to Compel Arbitration dated October 19, 2015, had requested "an order compelling Plaintiff to arbitrate the disputes between the parties pursuant to their agreement to arbitrate as set forth in the relevant policy of insurance." (Eisenhower Aff. Ex. D.)  That agreement calls for arbitration in New York:

> **A11:  JURISDICTION AND CHOICE OF LAW**
> This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of laws principles, and the parties hereto agree that any and all dispute arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York and to be conducted pursuant to the Rules of the American Arbitration Association.

(Final Award at 9, Eisenhower Aff. Ex. A.)  In this connection, the U.S. District Court for the District of Montana found that:

> Galilea, LLC accepted the terms of the insurance policy. Pantaenius emailed the policy to the Kittlers on May 14, 2015. (Doc. 7-6.) The Kittlers performed their end of the contract by paying the insurance premium on May 19, 2015. (Doc. 7-3 at 4.) Galilea, LLC agreed to the arbitration provision in the policy when it paid the premium, just as it agreed to every other provision and exclusion found in the policy.

Galilea, LLC v. AGCS Marine Ins. Co., No. CV 15-84-BLG-SPW, 2016 WL 754221, at *6 (D.

Mont. Feb. 24, 2016), aff'd, 879 F.3d 1052 (9th Cir. 2018).

The District of Montana and the Ninth Circuit were aware of the fact that the

Underwriters commenced a separate action in the Southern District of New York, just in case the

District of Montana found that it lacked the power to compel arbitration in New York.  See

Section I(d) above.  Further, in ruling on the motion to compel arbitration, the District of

Montana stated that it "did not consider the Insurers' argument that this Court should transfer

this case to the U.S. District Court for the Southern District of New York."  Galilea, LLC v.

AGCS Marine Ins. Co., No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *7 (D. Mont. Apr. 5,

2016).

The Before Galilea, LLC filed any opposition to the Underwriters' Petition in the Southern

District of New York in AGCS Marine Ins. Co. et al. v. Galilea, LLC, 1:15-cv-09168-AT, Judge

Analisa Torres stayed the action, *sua sponte*, citing the "first filed" rule and finding no special

circumstances that favored proceeding here rather than the District of Montana.  (Eisenhower

Aff. Ex. E.)  After the District of Montana issued an initial decision on February 24, 2016, Mr.

Gleason submitted a status letter to Judge Torres dated February 25, 2016, in which he stated in

relevant part:

> Respondent Galilea, LLC submits that, in light of the District of Montana's
> decision, the Petition in the present case should either be dismissed in favor of the
> first-filed Montana action, or denied as moot.

(Eisenhower Aff. Ex. F.)  After additional briefing in the District of Montana and issuance of a

supplementary decision on April 5, 2016, Mr. Gleason reiterated his request, stating:

> Respondent Galilea, LLC again submits that, in light of the District of Montana's
> complete decision, and in light of the parties' subsequent interlocutory appeals
> before the Ninth Circuit, the Petition in the present case should either be dismissed
> in favor of the first-filed Montana action, or denied as moot. By contrast, Petitioners

respectfully request that for the sake of judicial economy this Court exercise its inherent power to control its docket by leaving the case open in order to retain jurisdiction over all arbitrable matters and to allow for confirmation and enforcement of any New York arbitration award.

(Eisenhower Aff. Ex. G.)  At Galilea, LLC's request, and despite Underwriters' request to keep the case open, Judge Torres dismissed the action as moot on June 27, 2016, without prejudice to Underwriters' right to later seek confirmation and enforcement of an arbitration award, if any, in the proper venue.  (Eisenhower Aff. Ex. H.)  It seems that neither the District of Montana nor the Southern District of New York believed that the District of Montana lacked the power to compel arbitration in New York, so the AAA and the arbitrators certainly did not show "manifest disregard for the law" or "other behavior by which the rights of any party have been prejudiced" in conducting the arbitration in New York.  See, e.g., Ellison Framing, Inc. v. Zurich Am. Ins. Co., 805 F. Supp. 2d 1006, 1009, 1010 (E.D. Cal. 2011) (holding that AAA and arbitrator did not manifestly disregard law in deciding that arbitration should take place in location specified in parties' agreement, which was Schaumburg, Illinois, and that AAA's determination of venue was within the scope of arbitrable issues where the arbitration agreement provided that "[a]ny dispute arising out of the interpretation, performance or alleged breach of this agreement is subject to arbitration") (citing Aerojet–General Corp. v. American Arbitration Ass'n, 478 F.2d 248, 252 (9th Cir.1973), in which arbitrator's choice of New York as locale for arbitration was upheld where contract provided that AAA would select locale for the arbitration).

Accordingly, as Galilea, LLC argued that Underwriters' Petition in the Southern District of New York should be "denied as moot" "in light of the District of Montana's complete decision," and did not raise on appeal to the Ninth Circuit any argument that the District of

Montana lacked the power to compel arbitration in New York, Galilea, LLC and Mr. Kittler[2]

long ago waived any such objection.

### ii.   No Issue Regarding Arbitration Rules

The Final Award states that the Underwriters demanded "arbitration in New York

pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA")

…"  The Final Award makes no reference to any other AAA rules or procedures, so there is no

support for Petitioners' allegation that the arbitral tribunal conducted the proceedings pursuant to

the AAA's International Dispute Resolution Procedures.  Similarly, Amended Procedural Order

Number 1 dated September 7, 2018, states, at section 7, that:

> In her letter of May 24, 2018, Miroslava Schierholz, International Case Director
> ("May 24 Letter"), informed the parties, *inter alia*, that the AAA Commercial
> Arbitration Rules shall be in effect with respect to the dispute administration.

(Eisenhower Aff. Ex. I.)  Further, the Certification of Thomas Ventrone, Esq., Vice President of

the International Centre for Dispute Resolution, states that, "the subject arbitration was governed

by the AAA's Commercial Arbitration Rules as amended and in effect as of October 1, 2013."

(Eisenhower Aff. Ex. A.)  Accordingly, the arbitral tribunal conducted the proceedings and

rendered an award under the AAA's Commercial Arbitration Rules.

Petitioners were billed in accordance with the fee schedule for cases administered under

the AAA's Commercial Arbitration Rules, applicable as of the time of the filing of their

counterclaim in 2015, including the $7,000 "initial filing fee" and the $7,700 "final fee."

(Compare Gleason Decl. Ex. 9 with Eisenhower Aff. Ex. J, American Arbitration Association

Administrative Fee Schedule amended and effective July 1, 2015.)  As Petitioners did not accept

---

[2]  At Mr. Kittler's request, he voluntarily participated in the AAA arbitration in New York
as an additional party, over Underwriters' objections as to his standing to make a claim
under the policy.  (Final Award at 5-6, Eisenhower Aff. Ex. A.)

an offer to hold the hearings at the office of the undersigned attorneys, the parties agreed to jointly pay the fees necessary to hold the hearings at the International Centre for Dispute Resolution ("ICDR") in New York.  Petitioners' $1,125.00 share of the room rental fee is shown in Gleason Declaration Exhibit 9.

The issue regarding Petitioners' challenges to arbitrators Barak and Bulow, for the first time after the hearings and submission of post-hearing briefs, is addressed in detail in Section C below.  The AAA Commercial Arbitration Rules, amended and effective October 1, 2013, provide in relevant part:

> **R-18. Disqualification of Arbitrator**
> (a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:
>    i.   partiality or lack of independence,
>    ii.  inability or refusal to perform his or her duties with diligence and in good faith, and
>    iii. any grounds for disqualification provided by applicable law.
> …
> (c) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

(AAA Commercial Arbitration Rules contained in Eisenhower Aff. Ex. A.)

Petitioners offer no evidence that the AAA did not comply with R-18 and do not claim that they were denied an opportunity to be heard.  Petitioners do not offer any evidence that a substantively different procedure was employed to address the Petitioners' objections to the arbitrators and affected the AAA's determination of the issue, or that the International Dispute Resolution Procedures were relied upon.  Petitioners only point to the use of the Administrative Review Council.  In an e-mail dated February 19, 2019, Miroslava Schierholz, LL.M, ICDR Assistant Vice President, advised counsel for the parties that:

As previously advised, the parties have until February 22, 2019 to advise the ICDR, copying the other side, of any objections to the continued services of the Panel. If any objections are raised, the other party may respond within three days. As you may know, the ICDR typically presents any arbitrator challenge before International Administrative Review Council, which makes a determination regarding the challenge in accordance with the Rules and Review Standards (attached).

(Eisenhower Aff. Ex. K.)  The "Rules and Review Standards" attached to Ms. Schierholz's e-mail "outlines the Review Standards utilized by the ICDR's Administrative Review Council in making certain administrative decisions in cases administered by the ICDR," including "arbitrator challenges."  The document states in bold that, "**It is important to note that all challenges to an arbitrator must be made pursuant to the rules applicable to the dispute.**" (Id.)  The ICDR is part of the AAA.  The fact that the AAA administered this arbitration proceeding through its ICDR is of no importance, as the ICDR applied the Commercial Arbitration Rules – not the International Dispute Resolution Procedures – in view of the arbitration agreement set forth in the insurance policy.

### iii.   The Issue of Arbitrability was Delegated to the Arbitrators

The Ninth Circuit ruled that Galilea, LLC and the Kittlers are "sophisticated" parties "with respect to contracting for insurance policies" and that their agreement to arbitrate according to AAA rules showed "clear and unmistakeable intent to resolve arbitrability questions in arbitration, rather than federal court":

Both parties here are sophisticated with respect to contracting for insurance policies. The Underwriters are, obviously, sophisticated parties; they underwrite maritime insurance policies. But so are Galilea and the Kittlers.  Although they are Montana residents, Taunia and Chris Kittler formed a limited liability company under Nevada law to own and maintain a yacht worth more than a million dollars. In addition, Chris Kittler owns and operates a financial services company, also incorporated under Nevada law.  In light of Galilea's and the Underwriters' sophistication, the agreement to arbitrate according to AAA rules is sufficient to show clear and unmistakable intent to resolve arbitrability questions in arbitration,

rather than federal court. The district court therefore erred by declining to send those questions to arbitration and instead construing the scope of the parties' arbitration agreement itself.

Galilea, LLC v. AGCS Marine Ins. Co., et al., 879 F.3d 1052, 1062 (9th Cir. 2018).

On October 5 and 12, 2018, the parties submitted simultaneous main and reply briefs regarding jurisdictional issues.  The briefs addressed the arbitrability of the 12 counts set forth in the counterclaims filed by Galilea, LLC and Mr. Kittler.  The parties agreed that Counts I (Declaratory Relief) and II (Breach of Contract) were subject to arbitration, but disagreed as to Counts III through XII.  Underwriters argued that Counts III-XII should be dismissed as a matter of law or alternatively should be subject to arbitration as legally duplicative of Count II:

> [Counts IV through XII are] duplicative of Count II for Breach of Contract, not a cognizable claim, and/or based on purported duties created under or that would not exist absent a policy of insurance.  Counts IV through XII are being asserted in a transparent effort to avoid arbitration of the straightforward dispute regarding Galilea, LLC's failure to comply with the navigational limits of the Policy.  As Count II for Breach of Contract is subject to arbitration, the counts that merely duplicate it should also be subject to arbitration – and in any event, should be dismissed as a matter of law as explained below.

To summarize, Underwriters argued that under New York law, Counts IV (Promissory Estoppel) and V (Equitable Estoppel) should be dismissed because they fail as a matter of law when they are duplicative of the Breach of Contract claim (Count II) and do not allege a duty independent of the Policy but merely rely on an alleged promise to provide coverage and a perceived breach because the GALILEA was not covered while outside of the navigational boundaries set forth in the Policy.  See Celle v. Barclays Bank P.L.C., 48 A.D.3d 301, 303 (1st Dep't 2008); City of New York v. 611 W. 152nd St., Inc., 273 A.D.2d 125, 126 (1st Dep't 2000). Count VI (Breach of Implied Covenant of Good Faith and Fair Dealing) fails as a matter of law because the conclusory allegations merely refer to the "insurance contract by which the Insurers

agreed, among other things, to insure the sailing vessel Galilea against loss …" whereas "[u]nder New York law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim."  Spread Enterprises, Inc. v. First Data Merch. Servs. Corp., No. 11-CV-4743 ADS ETB, 2012 WL 3679319, at *3 (E.D.N.Y. Aug. 22, 2012).  Count VII (Breach of Fiduciary Duty) fails as a matter of law because a fiduciary duty generally does not arise in the relationship between an insurer and insured.  See Batas v. Prudential Ins. Co. of Am., 281 A.D.2d 260, 264 (1st Dep't 2001); see also Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am., 51 F. Supp. 3d 379, 399-401 (S.D.N.Y. 2014) (holding that relationship between insurer and insured was "nothing more than arm's length deal-making" and did not amount to a fiduciary relationship where the parties negotiated the terms of the insurance policy for a month and where insurer provided proposals and representations about coverage to insured).  Underwriters pointed out that Count VIII (Violation of Montana Unfair Trade Practices Act) should be dismissed because Montana law does not apply.  Underwriters argued that Count IX (Negligent Misrepresentation) should be dismissed because, like Count II for Breach of Contract, it alleged that Galilea, LLC and Mr. Kittler were sold a policy that did not provide coverage for the yacht while it was in the Caribbean, but "a cause of action for negligent or fraudulent misrepresentation cannot arise 'out of the same facts that serve as the basis for [a plaintiff's] causes of action for breach of contract.'"  Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F. App'x 54, 57 (2d Cir. 2013); see also Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.")  Underwriters argued that Count X (Constructive Fraud) fails as a matter of law because it contained mere breach of contract allegations, and "[u]nder New York

law, when a valid agreement governs the subject matter of a dispute between parties, claims

arising from that dispute are contractual; attempts to repackage them as sounding in fraud . . . are

generally precluded, unless based on a duty independent of the contract." Poplar Lane Farm

LLC v. Fathers of Our Lady of Mercy, 449 F. App'x 57, 59 (2d Cir. 2011). Underwriters further

argued that Count XI (Tortious Interference with Contract) and Count XII (Tortious Interference

with Prospective Economic Advantage) are both duplicative of the Breach of Contract claims as

they rely on the existence of an insurance contract and an alleged breach of the obligations set

forth in the policy in relation to salvage of the yacht after the grounding. As there is no coverage

for the loss, the Claimants were not responsible for paying the salvors or otherwise arranging for

the salvage of the GALILEA.

In their opening brief regarding jurisdictional issues, Galilea, LLC and Mr. Kittler stated

that they, "recognize that their claim for contract reformation (Count III) presents a

closer call [than Counts IV-XII] because this counterclaim is founded on an implied contract

theory." Underwriters noted that, "to overcome the heavy presumption that a deliberately

prepared and executed written instrument manifested the true intention of the parties, evidence of

a very high order is required" and the party seeking reformation "has to show in no uncertain

terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the

parties." George Backer Mgmt. Corp. v. Acme Quilting Co., 46 N.Y.2d 211, 219 (1978).

Underwriters further noted that, "[r]eformation on grounds of mutual mistake requires proof, by

clear and convincing evidence, that an agreement does not express the intentions of either party."

US Bank Nat. Ass'n v. Lieberman, 98 A.D.3d 422, 424, 950 N.Y.S.2d 127, 129 (2012) (citing

Migliore v. Manzo, 28 A.D.3d 620, 621, 813 N.Y.S.2d 762 [2006]). As Galilea, LLC and Mr.

Kittler did not allege facts sufficient to meet this high burden, and the inclusion of geographical

limits in a policy is standard in the marine insurance industry, Underwriters argued that Count III failed as a matter of law.

Underwriters argued that this is fundamentally an insurance coverage dispute, despite Petitioners' unavailing attempts to paint it as something else by alleging various purported quasi-contractual and tort claims which are not independent of the insurance contract dispute. Underwriters further argued that Petitioners must not be permitted to defeat the entire purpose of the parties' agreement to arbitrate their disputes by forcing the Underwriters to go to court to defend against claims that are merely duplicative of the breach of contract claim and/or not cognizable under federal maritime law and/or New York law.  Underwriters argued that the entire coverage dispute between the parties should be heard in the arbitration proceeding.

The arbitral tribunal issued a Jurisdiction Decision dated October 19, 2018, in which it determined that it had "full powers to address all issues relating to the Insurance Policy" and that all 12 counts of the counterclaims asserted by Galilea, LLC and Mr. Kittler were properly before the arbitral tribunal and would be decided in this proceeding, and that Mr. Kittler would be maintained as a party to the proceeding as he requested.  (Eisenhower Aff. Ex. L at 2, 4.)  The arbitral tribunal expressly stated that it would not rule on the request for dismissal of counterclaims at that time.  (Id. at 3.)

The Second Circuit has noted that In re Kinoshita & Co., 287 F.2d 951 (2d Cir. 1961), has "frequently been criticized in this Circuit" and been questioned by other circuits:

> More importantly, *Kinoshita,* which was decided before the Supreme Court's more recent decisions emphasizing the strong federal policy in favor of arbitration, has frequently been criticized in this Circuit,[8] and no decision of recent vintage mentions the case without confining it to its precise facts. *See, e.g., Louis Dreyfus Negoce,* 252 F.3d at 225 ("We have ... since limited [*Kinoshita* 's] holding to its facts, declaring that absent further limitation, only the precise language in *Kinoshita* ["arising under"] would evince a narrow clause."); *S.A. Mineracao,* 745 F.2d at 194 ("We decline to overrule *In re Kinoshita,* despite its

inconsistency with federal policy favoring arbitration, particularly in international business disputes, because we are concerned that contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision. We see no reason, however, why we may not confine *Kinoshita* to its precise facts."); *St. Paul Fire & Marine Ins. Co. v. Employers Reinsurance Corp.,* 919 F.Supp. 133, 135 (S.D.N.Y.1996) ("As a result [of later Second Circuit cases], the authority of *Kinoshita* is highly questionable in this Circuit.").

…

Footnote 8: Other circuits have questioned *Kinoshita* as well. *See, e.g., Battaglia v. McKendry,* 233 F.3d 720, 725 (3d Cir.2000) ("[The *Kinoshita* ] line of cases has been discredited both in the Second Circuit and in other jurisdictions."); *Gregory v. Electro–Mech. Corp.,* 83 F.3d 382, 385 (11th Cir.1996) (rejecting *Kinoshita* as "not being in accord with present day notions of arbitration as a viable alternative dispute resolution procedure").

ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 33 (2d Cir. 2002). Although Kinoshita has not been overruled, it is clearly disfavored and the Second Circuit has confined it to its facts in view of its inconsistency with the federal policy favoring arbitration.

As the parties delegated the issue of arbitrability to the arbitrators (as confirmed by the Ninth Circuit), the arbitral tribunal did not exceed its powers in determining that the entire coverage dispute should be heard in the arbitration proceeding.  Counts III-XII of the counterclaims do not allege duties independent of the insurance contract or otherwise cognizable claims, and are merely a transparent attempt to defeat the entire purpose of the parties' arbitration agreement.  (See Counterclaims, Gleason Decl. Ex. 2, ECF No. 15-1 at 56-64.)  Under the circumstances, Petitioners cannot meet the "heavy burden" of proving manifest disregard of the law.  See T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (citations omitted) ("A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a 'heavy burden'").

When parties delegate issues of arbitrability to the arbitrators, "a district court considering whether to confirm the award must review the arbitrators' resolution of

[arbitrability] questions with deference." Stemcor USA, Inc. v. Miracero, S.A. de C.V., 66 F. Supp. 3d 394, 399 (S.D.N.Y. 2014) (citing Schneider v. Kingdom of Thailand, 688 F.3d 68, 74 (2d Cir. 2012). Here, as the Ninth Circuit noted, Rule R-7 of the Commercial Arbitration Rules states in relevant part:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

See Galilea, LLC v. AGCS Marine Ins. Co., 879 F.3d 1052, 1061 (9th Cir. 2018). Similarly, in Stemcor, the parties agreed that questions of arbitrability were for the arbitrators to decide under AAA rules. Stemcor USA, Inc. v. Miracero, S.A. de C.V., 66 F. Supp. 3d 394, 399 (S.D.N.Y. 2014). Noting that the arbitrators' determination must be treated with deference, and responding to Stemcor's arguments that the dispute was too "collateral" to come within the meaning of the parties' arbitration agreement and that the panel acted in "manifest disregard of the law" by reading the parties' arbitration agreement to broadly, the court stated:

> Stemcor's argument for upending the arbitral award is wholly unconvincing. Considering that an arbitral award "should be enforced ... if there is a *barely colorable justification* for the outcome reached," the fact that Stemcor agreed to delegate arbitrability determinations is determinative.

Stemcor, 66 F. Supp. 3d 394, 399 (S.D.N.Y. 2014) (citations omitted).

**b.    Petitioners Fail to Establish Manifest Disregard of the Law**

As explained in detail in Section I(d) above, during the arbitration hearings, Galilea, LLC and Mr. Kittler never once objected to the admission of the insurance application as an exhibit in the arbitration proceeding. In fact, Mr. Gleason, as counsel for Galilea, LLC and Mr. Kittler, asked questions regarding the insurance application to: Andrea Giacomazza of Pantaenius, (Eisenhower Aff. Ex. C, Hearing Tr. 237:21-25, 258:1-21, 286:1-17); Mr. Kittler, including the

substance of his responses to questions contained in it, (Id., Tr. 347:3-23, 400:19-402:12, 404:19-407:12, 408:13-17, 412:5-14); and Mrs. Taunia Kittler, (see, e.g., id., Tr. 517:8-24).

Petitioners fail to meet even their threshold burden of proving that the arbitrators were aware of New York Insurance Law § 3204(a).  Petitioners do not provide this Court with any evidence that they brought this provision to the attention of the arbitrators.  Petitioners misleadingly state that, "the Panel was clearly aware of the relevant law, having reviewed and relied upon the Ninth Circuit decision in which it is explained."  (Am. Pet. 18.)  It has not been established whether the arbitrators actually read the Ninth Circuit's Opinion or simply incorporated into the Final Award certain portions of the Opinion that were quoted in Underwriters' post-hearing briefs.  In any event, even if the arbitral tribunal did read the Opinion, the Ninth Circuit made no mention of admissibility, instead reasoning that the application was not part of the insurance policy because it was not attached to the policy when it was issued.  Galilea, LLC v. AGCS Marine Ins. Co., 879 F.3d 1052, 1056–57 (9th Cir. 2018).  Section 3204(a) only appears in the Opinion in two parenthetical citations, without an explanation or any of the statutory language, and the Opinion otherwise contains no discussion of admissibility of an insurance application as evidence in a legal proceeding.  Reading the Opinion would not have made the arbitral tribunal aware of any admissibility issue.

Further, Rule R-34(a) of the Commercial Arbitration Rules states in relevant part that, "[c]onformity to legal rules of evidence shall not be necessary."  In any event, by failing to raise an objection to the use of the insurance application as an exhibit during the hearings – and actually relying upon the application as evidence in questioning witnesses – Galilea, LLC and Mr. Kittler clearly waived any objection to its use.  The arbitral tribunal did not show "manifest disregard of the law" in admitting the application as an exhibit, without objection by any party.

Absent any credible evidence in the Amended Petition that the arbitral tribunal was aware of New York Insurance Law § 3204(a), what it states, and what, if any, application it could have had to this proceeding, Petitioners have failed to meet even the threshold issue of their heavy burden of establishing manifest disregard of the law, let alone that the arbitrators ignored it or refused to apply it and that it was well defined, explicit, and clearly applicable to the case.  The Court may easily dispose of Petitioners' unsupported arguments.

    **c.**    **Evident Partiality or Corruption are Not Supportable Grounds to Vacate the Award on this Record and New York Law Clearly Requires Misconduct by the Arbitrator, not Unproven or Disputed Assertions.**

The third main reason that Petitioners seek vacatur is their allegation of evident partiality or corruption of "at least two of the three arbitrators."  (Am. Pet. at 3.)  Petitioners acknowledge that "a party challenging an award on the basis of evident partiality 'must clear a high hurdle,'" citing Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671, 130 S. Ct. 1758, 1767, 176 L. Ed. 2d 605 (2010).  Petitioners base their argument on the purported offering of appointments to two of the arbitrators to serve in other AAA arbitration proceedings in which Underwriters were a party, but neglect to mention that the AAA employs a "strike and rank" method by which parties do not directly appoint arbitrators.  Petitioners complain that they were put in an untenable position because if they consented to allow the arbitrators to serve as panelists it would allow the Underwriters to improperly influence the arbitrators with the promise of future appointments. Petitioners admit that they "decided not to object," (Am. Pet. 7), but claim that if they objected to the arbitrators or to the appointments, they would only alienate the arbitrators from Galilea, LLC's position because of some lost opportunity to serve in future arbitrations involving the Pantaenius insurance policy. (Am. Pet. at 2.)  The Amended Petition makes no mention of the "strike and rank" procedure followed by the American Arbitration Association for the appointment of arbitrators under the Commercial Arbitration Rules, the

disclosures made by Arbitrator Bulow and Arbitrator Barak prior to their appointment for the

Galilea, LLC arbitration, and Petitioners' consent to the arbitral tribunal as constituted with all

relevant disclosures.

Rule R-12 of the Commercial Arbitration Rules sets forth the "strike and rank" method of

arbitrator selection.  (Rules contained within Eisenhower Aff. Ex. A.)  The AAA provides the

parties with an identical list of persons chosen from its national roster (together with their

resumes).  If the parties do not agree to an arbitrator or arbitrators, they strike any names

objected to, number the remaining names in order of preference, and return the list to the AAA.

From among the persons approved on both lists, and in accordance with the designated order of

mutual preference, the AAA invites arbitrators to serve.  However, if the parties fail to agree on

any of the persons in the list, or if acceptable arbitrators are unable to act or the appointment

cannot otherwise be made from the submitted lists, the AAA has the power to appoint the

arbitrator(s) without the submission of additional lists.  Accordingly, under the "strike and rank"

method, no arbitrators are appointed by a particular party.

The "List for Selection of Arbitrator" furnished in the Galilea arbitration on June 7, 2018,

provided 15 individuals including Joanne Barak, Esq., Lucienne C. Bulow, and John W. Lowe,

Jr., who served as the Panel Chair.  (Eisenhower Aff. Ex. M.)  Instructions on the form included:

> Each side may strike the names of any arbitrators from the list, although we
> encourage each side to leave as many names as possible, to facilitate the
> appointment process.  Please indicate your order of preference by number, with
> number one indicating your first choice. We will work on appointing an arbitrator
> that meets the needs and preferences of both parties. … Please do not exchange
> these lists.  … The parties may strike and rank their preferences, which will be kept
> confidential.

Based on the parties' mutual preferences in the lists they submitted, the AAA invited the

arbitrators to serve on the tribunal.  This same "strike and rank" procedure was and is used for

other AAA arbitrations where a marine insurance policy is at issue, with potentially some of the

same individuals being placed on the list by the AAA in view of their professional experience.

So, the inclusion of Ms. Bulow or Ms. Barak in the "List for Selection of Arbitrator" for the

Galilea arbitration or for any other proceeding, and the invitation of Ms. Bulow or Ms. Barak to

serve as arbitrators, are decisions made by the AAA.  No arbitrator is appointed by a party.

Underwriters have no idea how Petitioners ranked Ms. Bulow or Ms. Barak on their list, but it

seems that their qualifications and the rankings by the parties resulted in their appointment.

After their disclosures were provided to the parties under cover of a letter dated June 27, 2018,

the AAA confirmed the appointment of arbitrators Barak and Bulow on July 16, 2018, as no

objections had been received.  (Eisenhower Aff. Ex. N.)

Before the second hearing day commenced, Arbitrator Barak disclosed that she was being

considered for service as an arbitrator in another dispute involving the Pantaenius America Yacht

Policy and counsel for the Underwriters.  She was invited to serve by the AAA based on its

consideration of the mutual rankings by the parties to the other arbitration.  The Underwriters did

not "select" Ms. Barak or Ms. Bulow to serve in this or any other AAA arbitration.  Their

selection indicates that their experience resulted in their being placed on the List for Selection of

Arbitrator, that the parties did not strike them from the list and their mutual rankings were

favorable, and that the AAA decided to offer them an appointment.  However, the transcript from

the hearing makes it abundantly clear that Mr. Gleason conferred with Mr. and Mrs. Gleason, the

members of Galilea, LLC, who were in attendance at the hearings and then he stated on the

record that they, "appreciate the updated disclosure, and we're confident that this panel can

differentiate the fact of this case from any other case so don't have an objection."  (Eisenhower

Aff. Ex. O, Tr. 302-303.)  On December 18, 2018, Mr. Gleason again advised the AAA: "Given

the late date, [Galilea, LLC and Mr. Kittler] have no objection."  (Eisenhower Aff. Ex. P.)  There

was no objection to the service of the arbitrators until after the post-hearing briefs were

submitted, when perhaps Petitioners realized that the evidence was not favorable to them.  The

Kittlers' written communications contained no evidence that they ever objected to the specific

Cruising Area defined by the PAYP terms and conditions when the application, binder, and

policy were submitted and/or reviewed by them over a timeframe of several weeks prior to the

grounding of the GALILEA. Galilea, LLC's application failed to disclose to Underwriters that

the yacht suffered a prior loss or that a policy with another insurer had lapsed after the premium

was not paid but before the Pantaenius policy was in effect.  These breaches of the duty of

utmost good faith led to the arbitral tribunal's ruling that the policy was void ab initio.

After Ms. Bulow disclosed that she had been "appointed by the AAA's office in Rhode

Island," (Gleason Decl. Ex. 5), Mr. Gleason began asking questions for the first time about

disclosures Ms. Bulow had made in June 2018, (Eisenhower Aff. Ex. Q), before she was

confirmed as an arbitrator in the Galilea proceeding.  The AAA then directed all of the

arbitrators to review their records and advise of any other cases they had been involved with,

active or otherwise, in which the named parties, or related entities, counsel or witnesses have

been involved, and responses were provided by the arbitrators including Ms. Barak's

supplemental disclosure dated February 13, 2019, stating that:

> Hello Mira, the only update I have on the case to which I was appointed involving
> Claimant (and disclosed during the hearings) is that the case settled shortly after
> my appointment without my having performed any work on the matter or
> communication with the parties.  Kind regards,  Joanne Barak

(Eisenhower Aff. Ex. R.)  Ms. Bulow provided supplemental disclosures relating to Mr.

Gleason's belated questions regarding the disclosures she made in June 2018, which were

forwarded to the parties by the AAA on February 19, (Eisenhower Aff. Ex. K), and then Ms.

Bulow advised on February 21 that she had been informed that her appointment in the other matter she had disclosed would not be confirmed and another arbitrator would be appointed in her stead, (Eisenhower Aff. Ex. S).  A review of Arbitrator Bulow's initial disclosures and supplemental disclosures makes clear that Petitioners were fully aware of her maritime background and 20 years' experience as a maritime arbitrator, as well as her service on the New York State Board of Commissioners of Pilots, before they accepted her as an arbitrator.

Despite learning that Ms. Barak and Ms. Bulow would not be acting as arbitrators in the matters they disclosed, Mr. Gleason wrote to the AAA on February 22, 2019, after the evidentiary record had been closed, seeking their removal and requesting that Mr. Lowe render a final award on his own.  Underwriters responded by letter dated February 27, 2019, stating among other things that, "if Galilea, LLC and Mr. Kittler had questions about arbitrator Bulow's disclosures, they should have asked last summer before they accepted her as an arbitrator – not seven and a half months later, after post-hearing briefing."  (Eisenhower Aff. Ex. T.)  In their letter, Underwriters provided New York law on the subject of corruption or arbitral bias:

> Respondents have not presented any basis to disqualify the arbitrators pursuant to AAA Commercial Arbitration Rule R-18 Disqualification of Arbitrator, for partiality or lack of independence, inability or refusal to perform his or her duties with diligence and in good faith, or any grounds for disqualification provided by applicable law. (See, AAA Commercial Arbitration Rule R-18 (a)). Under New York law, "An application to disqualify an arbitrator during the course of the arbitration must be based on misconduct on the part of the arbitrator (*Astoria Medical,* 11 N.Y.2d at 137, 227 N.Y.S.2d 401, 182 N.E.2d 85). And, while the appearance of bias may suffice (*see Rabinowitz v. Olewski,* 100 A.D.2d 539, 540, 473 N.Y.S.2d 232 [citations omitted]), that bias must be clearly apparent based upon established facts, not merely supported by unproved and disputed assertions." *Bronx-Lebanon Hosp. Ctr. v. Signature Med. Mgmt. Grp., L.L.C.*, 6 A.D.3d 261, 261, 775 N.Y.S.2d 279, 280 (2004). Other than criticizing the AAA process for selection of its arbitrators, Respondents provide no basis to substantiate arbitral bias under the AAA Commercial Arbitration Rules, including Rule R-18, or under New York law.

The alleged potential risk of payment of substantial monetary sums to arbitrators Barak and Bulow for service on other arbitration Panels was fully investigated.  The AAA issued its Ruling on March 5, 2019, denying the challenge of Galilea, LLC and Mr. Kittler to the continued service of Arbitrators Barak and Bulow.  (Gleason Decl. Ex. 8, ECF No. 15-1 at 87-88.)

Petitioners offer no support for their claim that if an arbitrator were removed, the remaining arbitrators would be forced to return their fees.  Considering that the arbitration was stayed by the District of Montana at Petitioners' request and arbitrators were not confirmed until July, 2019, it is misleading for Petitioners to suggest that it had been pending for three years.

By Petitioners' own admission, findings regarding the "Competent Skipper" endorsement did not affect the tribunal's ultimate award.  So, these findings are no basis to vacate the award.

## CONCLUSION

WHEREFORE, Respondents respectfully request that this Court enter an Order denying the Amended Petition to Vacate Arbitration Award in its entirety.


Dated: New York, New York
    July 24, 2019                    Respectfully submitted,

                                     HILL RIVKINS LLP
                                     *Attorneys for Respondents*

                          By:   s/ Brian P. R. Eisenhower
                                Gerard W. White
                                Brian P. R. Eisenhower
                                45 Broadway, Suite 1500
                                New York, New York 10006
                                Tel. 212-669-0600