```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
GALILEA, LLC and CHRISTOPHER L.   :
KITTLER,   :
  :
                              Petitioners,   :       19-CV-05768 (VEC)
  :
      -against-   :       OPINION AND
  :           ORDER
  :
AGCS MARINE INSURANCE   :
COMPANY, LIBERTY MUTUAL   :
INSURANCE COMPANY, and STARSTONE   :
NATIONAL INSURANCE COMPANY,   :
  :
                              Respondents.   :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Petitioners Galilea, LLC and Christopher Kittler, a member of Galilea, LLC, seek to vacate an arbitration award entered for AGCS Marine Insurance Co., Liberty Mutual Insurance Co., and Starstone Insurance Co. ("Respondents"). Dkt. 15. Cross-Petitioners/Respondents move to confirm the award and seek to recover the fees and costs associated with the 3-day arbitration proceeding. Dkt. 29. For the reasons stated below, the Petition to Vacate the Arbitration Award is DENIED. The Cross-Petition to Confirm the Arbitration Award is GRANTED.

## BACKGROUND

       This action stems from the grounding of petitioners' yacht in Panamanian waters and the resulting insurance coverage dispute. *See* Am. Pet. to Vacate Arbitration Award, Dkt. 15. In April 2014, Petitioner Galilea, LLC purchased a 60-foot yacht. *Id.* at 3-5; Final Award, Dkt. 29-2 at 2. The yacht was insured by Seawave Yacht Insurance through May 7, 2015; on May 12, 2015, Petitioners executed the Pantaenius Insurance Policy ("Pantaenius Policy"), which insured

1

the yacht through May 12, 2016.  *Id*.  Respondents are the named underwriters for the Pantaenius Policy.  Cross-Pet. to Confirm Arbitration Award, Dkt. 29 ¶¶ 9-12.

In May 2015, the yacht began a voyage from Florida to San Diego, with plans to transit the Panama Canal.  Final Award, Dkt. 29-2 at 2.  On June 24, 2015, Petitioners experienced mechanical difficulties, causing them to run aground near Colon, Panama.  *Id.* at 3, 17.  Although the passengers were safely rescued by the Coast Guard, the yacht was heavily damaged and required $1.6 million in repairs.  Am. Pet. to Vacate Arbitration, Dkt. 15 at 4.  On the day of the incident, Petitioners contacted Respondents to request coverage; the request for coverage was denied on the grounds that the accident occurred outside of the navigation limits delineated in the Pantaenius Policy.  Final Award, Dkt. 29-2 at 8, 18.

On August 6, 2015, Respondents initiated arbitration proceedings in New York before the American Arbitration Association ("AAA") seeking a declaration that the vessel was not covered under the Pantaenius Policy and compensation for costs associated with arbitration.  Final Award, Dkt. 29-2 at 3.  Petitioners filed objections and twelve counterclaims in the arbitration proceeding and, the same day, commenced a lawsuit in the Federal District Court of Montana.[1]  *See* Dkt. 15-1 at 47; *Galilea LLC v. AGCS Marine Insurance Company et al.*, No. 15-CV-0084 (D. Mont.), Dkt. 1.  On October 19, 2015, in the federal court proceeding, Respondents filed a motion to compel arbitration; on April 5, 2016, the motion was granted as to two of Petitioners' twelve claims.  Dkts. 21-22, 47.  On appeal, the Ninth Circuit held that the insurance policy's arbitration clause showed a "clear and unmistakable intent to resolve arbitrability questions in

---

[1] Petitioners' federal court complaint alleged the same twelve claims that were asserted as counterclaims in the arbitration proceeding; Petitioners asserted claims for Declaratory Relief, Breach of Contract, Contract Reformation, Promissory Estoppel, Equitable Estoppel, Breach of Implied Covenant of Good Faith & Fair Dealing, Breach of Fiduciary Duty, Violation of Montana Unfair Trade Practices, Negligent Misrepresentation, Constructive Fraud, Tortious Interference with Contract, and Tortious Interference with Prospective Economic Advantage.  Petitioners also requested a stay of the arbitration proceedings.  *See* 15-CV-0084 (D. Mont.), Dkt. 1.

arbitration" and remanded the case to the district court to grant Respondents' motion to compel arbitration in its entirety. *Galilea, LLC v. AGCS*, 879 F.3d 1052, 1062 (9th Cir. 2018); *see* No. 15-CV-0084 (D. Mont.), Dkt. 59.

A three-day arbitration began in New York City on December 12, 2018. Final Award, Dkt 29-2 at 6. After soliciting input from the parties through the "strike and rank" method,[2] a panel of three arbitrators was appointed by the AAA. Resp. to Am. Pet. to Vacate Arbitration Award, Dkt. 28 at 21; Eisenhower Aff., Dkt. 28 Ex. M. The panel conducted three days of hearings, took testimony from six witnesses, and received post-hearing briefs. Final Award, Dkt. 29-2 at 7, 35. The arbitration panel issued its final award on March 20, 2019, holding that: (1) Galilea LLC and Kittler's counterclaims for payment under the insurance policy were denied with prejudice; (2) all remaining counterclaims contained in Petitioners' objections were denied; (3) the Pantaenius Policy was void *ab initio* because Petitioners failed to disclose prior water damage sustained by the yacht and that there was a five-day lapse in insurance coverage between the Seawave and Pantaenius coverage periods; and (4) Petitioners failed to show that they notified Respondents of their specific insurance requirements. *Id*. The award also granted Respondents' request for $59,340 as reimbursement for fees and expenses. *Id.*

Petitioners now seek to vacate the arbitration award on the grounds that: (1) the arbitrators exceeded their power by proceeding in New York rather than in Montana, by conducting the arbitration through the International Center for Dispute Resolution ("ICDR") division of the AAA, and by exercising jurisdiction over all twelve of petitioners' counterclaims; (2) the arbitrators exhibited manifest disregard for the law by admitting the insurance application

---

[2] In the strike and rank method of selecting arbitrators, each party receives a list of potential arbitrators. The party then strikes certain names and ranks the remaining names by preference. The arbitrators are selected based on both parties' ratings. AAA Commercial Arbitration Rules, R-12.

into the proceeding; and (3) there was evident partiality on the part of two of the arbitrators. Dkt. 15. Respondents filed a cross-petition to confirm the award pursuant to 9 U.S.C. § 9. Dkt. 29.

## DISCUSSION

### A. Legal Framework

Under the Federal Arbitration Act, a district court may "vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) the arbitrators exhibited evident partiality or corruption; (3) the arbitrators were guilty of misconduct such as refusing to hear evidence pertinent and material to the controversy or any other misbehavior that prejudiced the rights of any party; or (4) the arbitrators exceeded their powers." *Pfeffer v. Wells Fargo Advisors, LLC*, 723 F. App'x 45, 47 (2d Cir. 2018) (quoting 9 U.S.C. § 10(a)) (citation and internal quotation marks omitted). The "party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)) (internal quotation marks omitted). Moreover, an arbitration award is granted significant deference by the court, and a court should enforce an award "if there is a barely colorable justification for the outcome reached." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (citation and quotation marks omitted). A panel does not have to explain the rationale behind its finding so long as the "ground[s] for the arbitrator's decision can be inferred from the facts of the case." *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991).

### B. The Arbitration Panel Did Not Exceed Its Authority

A challenge that an arbitrator exceeded his powers falls under § 10(a)(4), which is "consistently accorded the narrowest of readings." *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 50–51 (2d Cir. 2015) (citations and internal quotation marks omitted). "An arbitrator exceeds his authority only by (1) considering issues beyond those the parties have submitted for his consideration, or (2) reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Id.* at 51 (quoting *Jock v. Sterling Jewelers, Inc.,* 646 F.3d 113, 122 (2d Cir. 2011)) (alteration and internal quotation marks omitted). "Under § 10(a)(4), [courts] do not consider whether the arbitrators correctly decided [an] issue." *Id.* at 52 (citations and internal quotation marks omitted); *see also DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997) ("DiRussa's real objection appears to be that the arbitrators committed an obvious legal error in denying him attorney's fees. Section 10(a)(4) was not intended to apply to such a situation.").

Here, Petitioners argue that the arbitrators exceeded their authority by: (1) conducting the arbitration in New York rather than in Montana, (2) proceeding through the ICDR, and (3) deciding claims allegedly outside the scope of the arbitration agreement. Am. Petition to Vacate Arbitration Award, Dkt. 15 at 1-2.

### i. New York Was the Appropriate Forum for Arbitration

Petitioners contend that the arbitration proceeding was improperly conducted in New York, and instead should have occurred in Montana, where the initial motion to compel arbitration was filed. *Id.* at 10. The Court disagrees. Pursuant to Rule R-11 of the Commercial Arbitration Rules, "when the parties' arbitration agreement requires a specific locale [to conduct arbitration], absent the parties' agreement to change it . . . the locale shall be that specified in the

5

arbitration agreement." *See Augustea Impb Et Salvataggi v. Mitsubishi Corp.,* 126 F.3d 95, 98 (2d Cir. 1997) ("The forum selected by the parties in the arbitration agreement is an essential part of the parties' agreement to arbitrate."); *PaineWebber, Inc. v. Rutherford*, 903 F.2d 106, 108-09 (2d Cir. 1990) (holding that a provision requiring arbitration to be conducted "before the [AAA] in the City of New York" was sufficient to show that New York City was the appropriate forum for arbitration proceedings as a reference to locale would be "superfluous if not a forum selection clause").

Here, the insurance policy's arbitration clause specifies that the arbitration proceedings will "take place within New York County [] and [] be conducted pursuant to the Rules of the American Arbitration Association." Final Award, Dkt. 29-2 at 9; Cross-Pet. to Confirm Arbitration Award, Dkt. 30 at 7. Thus, because the forum selection clause clearly designates New York as the appropriate forum, the arbitration panel did not exceed its authority by proceeding in New York.

### ii. The Panel Did Not Exceed Its Authority by Conducting the Proceeding Through the ICDR

Petitioners argue that the arbitration panel exceeded its authority by conducting the arbitration through AAA's International Dispute Resolution Center and pursuant to its International Dispute Resolution Procedures. Am. Petition to Vacate Arbitration Award, Dkt. 15 at 11-12. This argument is unavailing; the arbitration was conducted in accordance with AAA rules, and the arbitration award expressly states that the proceeding was initiated and governed by the AAA Commercial Arbitration Rules.[3] Final Award, Dkt. 29-2 at 3.

---

[3]  Additionally, the vice president of the ICDR certified that the arbitration "was governed by the AAA's Commercial Arbitration Rules as amended and in effect as of October 1, 2013," Eisenhower Aff, Dkt. 28 Ex. A., and Amended Procedural Order Number 1 states that the International Case Director informed both parties on May 24, 2018, that the "AAA Commercial Arbitration Rules shall be in effect with respect to the dispute administration," *id.* Ex. I.

### iii. The Panel Did Not Exceed Its Authority by Exercising Jurisdiction Over All Claims

The Federal Arbitration Act established "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Arbitration Act states that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  If the "arbitration clause is narrow, a collateral matter will generally be ruled beyond [the arbitration clause's] purview," but if the claims are within the scope of the arbitration agreement, they will proceed through arbitration.  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).

Here, Petitioners allege that the arbitration panel exceeded its authority by exercising jurisdiction over all of Petitioners' counterclaims because ten of the counterclaims are allegedly outside the scope of the arbitration agreement.  Am. Pet. to Vacate Arbitration Award, Dkt. 15 at 14-15.  The Court disagrees.  The arbitration clause in the insurance policy provides that "any and all disputes arising under [the] policy" will be "resolved exclusively by binding arbitration." Final Award, Dkt. 29-2 at 9.  Because all of Petitioners' counterclaims raise issues related to the contract's formation, interpretation, or implementation, they constitute "disputes arising under [the] policy" and fall squarely within the scope of the arbitration clause.[4]

Moreover, in ruling on Respondents' motion to compel arbitration, the Ninth Circuit conclusively held that the arbitration clause showed a "clear and unmistakable intent to resolve

---

[4]     Petitioners rely on *In re Kinoshita & Co.,* 287 F.2d 951, 953 (2d Cir. 1961), to argue that the arbitration clause should be construed narrowly.  While *In Re Kinoshita* has not been overruled, its value is limited when considered in light of the policy shift towards arbitration since it was decided.  *In re Kinoshita* was decided in 1961, well before the Supreme Court emphasized its preference for arbitration, and it has "been frequently criticized" in the Second Circuit.  *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 33 (2d Cir. 2002) (noting that *In re Kinoshita* has frequently been limited to its facts, is inconsistent with federal policy, and yields questionable authority).

7

arbitrability questions in arbitration," *Galilea*, 879 F. 3d at 1061-62, and noted that, pursuant to the AAA Commercial Rules, arbitrators "have the power to rule on [their] own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement," *id*; Commercial Arbitration Rule R-7.  Here, the arbitrators conclusively ruled that they had "full power[] to address all issues relating to the Insurance Policy" and that all twelve counterclaims were properly before them.  Eisenhower Aff., Dkt. 28-1 Ex. L ("A review of the subsequent counterclaims, Count III through Count XII, reveals that [] all of these claims are issues of either contract formation, contract interpretation, contract implementation, or contract performance …[and] are properly before this arbitral tribunal").  A district court "must review the arbitrators' resolution of [arbitrability] questions with deference."  *Stemcor USA, Inc. v. Miracero, S.A. de C.V.,* 66 F. Supp. 3d 394, 399 (S.D.N.Y. 2014).  The Court has done so and sees no error in the panel's conclusion.

In short, because the insurance policy shows a clear intent to arbitrate disputes arising from the policy, and the arbitration panel expressly ruled that all twelve counterclaims were appropriate for arbitration, the arbitration panel did not exceed its authority.

### C.     The Arbitration Panel Did Not Exhibit a Manifest Disregard for the Law

The Second Circuit permits vacatur if the award was rendered in manifest disregard of the law.  *Tully Constr. Co. v. Canam Steel Corp.,* 684 F. App'x 24, 26 (2d Cir. 2017) (citation omitted).  "A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden [and a court must find] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (citations omitted).  The first prong requires that the law "be obvious and capable of being readily and instantly perceived by the

average person qualified to serve as an arbitrator," *Merrill Lynch v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986); there is no presumption that the arbitrator was aware of the applicable law, *Wallace*, 378 F.3d at 190; *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 213 (2d Cir. 2002). The second prong requires a finding that the panel "appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Westerbeke*, 304 F.3d at 217 (citing *Merrill Lynch*, 808 F.2d at 933). A petitioner seeking vacatur based on alleged manifest disregard of the law must show "more than error or misunderstanding with respect to the law," *PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14-CV-5183, 2015 WL 5144023, at *7 (S.D.N.Y. Sept. 1, 2015); the doctrine is one of "last resort . . . limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent," *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003).

Here, Petitioners argue that the arbitration panel manifestly disregarded the law by admitting the insurance application into evidence during the proceeding; Petitioners claim the admission contradicted the Ninth Circuit's ruling that the application was not a contract and violated New York Insurance Law § 3204(a).[5] Am. Petition to Vacate Arbitration Award, Dkt. 15 at 17-18. The Court notes at the outset that the arbitration award indicates that the panel relied on the insurance *policy*, not the application, in reaching its substantive conclusion.[6] Final

---

[5] N.Y. Ins. Law § 3204(a)(2) states that applications for insurance policies are inadmissible "unless a true copy was attached to such policy or contract when issued."

[6] The Court also notes that, because Petitioners not only failed to object to the admission of the insurance application during the arbitration but also relied on it themselves throughout the proceeding, Petitioners have waived any objection to the application's admission. *See* Eisenhower Aff. Ex. C; *Cook Indus., Inc. v. C. Itoh & Co. (America) Inc.*, 449 F.2d 106, 107-08 (2d Cir. 1971) (holding that petitioner "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.").

Award, Dkt. 29-2 at 2, 7-9, 29.  Regardless, the panel's admission of the application is insufficient to constitute manifest disregard of the law because Petitioners fail to show that the arbitrators knew that the New York Insurance Law provision applied to the proceeding and that they "willfully flouted the governing law by refusing to apply it." *Westerbeke*, 304 F.3d at 217 (citing *Merrill Lynch*, 808 F.2d at 933).  Moreover, although the arbitrators cited the Ninth Circuit's opinion, that opinion merely holds that the insurance application is not a contract for purposes of enforcing an arbitration clause; it neither states nor implies that the application is per se inadmissible.  Thus, Petitioners fail to show that the panel's admission of the insurance application was anything "more than error or misunderstanding with respect to the law."  *PDV Sweeny, Inc.*, 2015 WL 5144023, at *7.  Accordingly, the Court finds that the panel did not manifestly disregard the law in reaching its decision.

### D. Evidence of Partiality and Corruption

Under the AAA Commercial Arbitration Rules an arbitrator may be disqualified for "(i) partiality or lack of independence, (ii) inability or refusal to perform his or her duties with diligence and in good faith, and (iii) any grounds for disqualification provided by applicable law." Commercial Arbitration Rule R-18.  An arbitrator may be disqualified as partial when "a reasonable person, considering all the circumstances, would *have* to conclude that the arbitration was partial to one side." *Applied Indus. Materials Corp. v. Ovalar Makine Tecaret Ve Senayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (internal citation omitted).  A party seeking vacatur, therefore, must show "evident partiality," which is "something more than the mere appearance of bias."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citations omitted).  Although proof of actual bias is not required, the "showing of evident partiality must be direct and not speculative."  *Id*.  Failure to disclose a substantial

relationship between an arbitrator and a party may be sufficient to demonstrate partiality, but arbitrators are not automatically disqualified merely because of a "business relationship with the parties before them if both parties are informed of the relationship in advance." *Applied Indus. Materials Corp.,* 492 F.3d at 137; *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72-73 (2d Cir. 2012); *Cook Industries*, 449 F.3d at 108 (distinguishing a case in which "the facts concerning the close business connections between the third arbitrator and the [party] were unknown . . . and were never revealed").

Here, Petitioners allege only that Arbitrators Barak and Bulow were biased because they were offered additional appointments on separate arbitration panels involving Respondents. Am. Pet. to Vacate Arbitration Award, Dkt. 15 at 19. Petitioners point to no evidentiary or procedural rulings or any objective evidence of partiality on the part of either of the arbitrators. Petitioners claim that they were put in an "impossible position" of choosing between consenting to additional appointments and allowing Respondents to influence the arbitrators "with the prospect of future arbitration appointments" or objecting and "hav[ing] their case decided by arbitrators who they had just forced to decline a lucrative employment opportunity." *Id.*

Petitioners dramatically overstate Respondents' influence over the identity of individuals selected to serve as arbitrators in actions in which they are parties. As noted *supra,* the AAA utilizes a "strike and rank" method, by which each party receives an identical list of potential arbitrators and may strike certain names and rank the remaining names. Commercial Arbitration Rule E-4; Eisenhower Aff., Dkt. 28 Ex. M. It is the AAA that then invites individual arbitrators to serve in accordance with both sides' rankings. Eisenhower Aff., Dkt. 28 Ex. M. This procedure ensures that no party can "appoint" an arbitrator, as the final list is comprised of only mutually-agreed upon arbitrators. Resp. to Am. Pet. to Vacate Arbitration Award, Dkt. 28 at 21.

Thus, Petitioners' allegation that the arbitrators were biased due to a desire to be appointed by Respondents in other arbitration proceedings is overstated and misguided.  Additionally, even if the Court were to accept Petitioners' claim that they subjectively felt compelled to consent to the arbitrators' continued service, Petitioners fail to show *any* objective evidence of corruption or partiality on the part of the panel.  *See Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.  On this record, no reasonable person, considering all of the circumstances, would conclude, let alone be compelled to so conclude, that Arbitrators Barak and Bulow were partial to Respondents.

Moreover, the AAA rules note that "upon any objection to the continued service of an arbitrator . . . the AAA shall determine whether the arbitrator should be disqualified . . . and shall inform the parties of its decision, which [] shall be conclusive."  Commercial Arbitration Rule R-18.  Here, the AAA found no issue with either Barak or Bulow and accordingly denied petitioners' objections and allowed the proceeding to continue.[7]  Dkt. 15-1 at 87-88.  The Court does not disagree with the conclusion of the AAA.

## CONCLUSION

For the foregoing reasons, the Court finds that the arbitrators did not exceed their authority, did not display a manifest disregard of the law, and did not demonstrate partiality.  Accordingly, the Petition to Vacate the Arbitration Award is DENIED.  Respondents' Cross-Petition to Confirm the Arbitration Award is GRANTED.  As provided in the Final Award, Petitioners are directed to pay $59,340 as reimbursement of fees and expenses associated with

---

[7]   The Court also notes that Petitioners' contemporaneous conduct belies their current position that the arbitrators were partial.  After Barak disclosed that she had been selected for an arbitration panel involving one of the Respondents, Petitioners expressly agreed to continue with the proceedings, stating that they were "confident that this panel can differentiate the facts of this case from any other case, *so we don't have an objection.*" Dkt. 15-1 at 75 (emphasis added).  Similarly, although Bulow immediately disclosed that she was being considered for another marine insurance arbitration (for which she ultimately was not selected), Petitioners failed to object to her presence on the panel for sixteen days.  *Id*. at 78-81.

the arbitration proceeding.  The Clerk of Court is respectfully directed to enter judgment in favor of Respondents and to close this case.

**SO ORDERED.**

**Date:  December 16, 2019**
**New York, New York**

                                                **VALERIE CAPRONI**
                                                **United States District Judge**